James A. Fox v. Commissioner. James A. Fox and Lorraine Fox v. Commissioner. Estate of Grace Cannon Fox, deceased, Rose M. Fox, Administratrix v. Commissioner. Estate of Grace Cannon Fox, deceased, Rose M. Fox, Administratrix v. Commissioner.
Fox v. Commissioner
Docket Nos. 47744, 47745, 47807, 47808. 0.
United States Tax Court
T.C. Memo 1955-310; 1955 Tax Ct. Memo LEXIS 28; 14 T.C.M. (CCH) 1212; T.C.M. (RIA) 55310; November 23, 1955
*28 1. Net Worth Method. - Absent a showing by petitioner that his books of account accurately reflected his income during the years in question, respondent's use of the net worth plus non-deductible expenditures method of determining petitioner's income is upheld; and the amounts of various items entering into the computation of petitioner's net worth during the years in question are determined. 2. Statute of Limitations. - The fraud issue having been conceded by respondent, the period of limitations bars the assessment of income taxes against petitioner for the years 1943 to 1945, inclusive. The year 1948 is also barred since respondent failed to meet his burden of showing that the five-year period of limitations applied. 3. Transferee Liability. - Transferee of property who received no beneficial interest in the property transferred held not to be liable as a transferee. P. A. Agelasto, Jr., Esq., Citizens Bank Building, Norfolk, Va., for the petitioners. Lyman G. Friedman, Esq., and R.G. de Quevedo, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and penalties thereon of petitioners as follows: Income Tax
Year
Deficiency
Penalties
Section
Section
Section
Section
291(a)
293(b)
294(d)(1)(A)
294(d)(2)
Docket No. 47744: 1943
$ 2,528.81
$ 1,353.36
1944
1,138.79
569.40
1945
15,242.48
7,621.24
1946
2,834.82
$ 708.71
1,417.41
$ 283.48
$ 170.09
Docket No. 47745: 1948
1,001.38
500.69
1949
3,531.62
1,765.81
575.08
345.05
1950
30,289.48
3,028.95
15,144.74
3,332.76
1,999.66
1951
630.00
315.00
277.96
166.78
Docket No. 47807: 1943-46
21,744.90
708.71
10,961.41
283.48
170.09
Docket No. 47808: 1948-50
7,741.16
320.86
3,870.58
928.07
556.83
*30 The principal issues for determination are (a) the correctness of respondent's computation of the net income of James A. Fox and his wife Lorraine for the taxable years involved here by use of the increase in net worth plus non-deductible expenditures method; (b) whether the assessment and collection of the deficiencies for some of the years involved here are barred by the expiration of any statutory period of limitations; (c) whether respondent has shown that any part of the deficiencies here was due to fraud with intent to evade tax; (d) whether the Estate of Grace Cannon Fox, deceased, is liable as a transferee of assets for any of the deficiencies herein, except 1951. There are also questions of whether respondent properly made additions to tax for failure to file a return and for late filing of a return (section 291(a), I.R.C. of 1939), for failure to file a declaration of estimated tax and for substantial underestimate of estimated tax (sections 294(d)(1)(A) and (d)(2)). Petitioner James Fox's individual returns and the joint returns of James Fox and his wife Lorraine were filed with the collector of internal revenue for the district of Virginia. Findings of Fact At all *31 times material to this proceeding petitioner James Fox lived in Princess Anne County, Virginia. Petitioner Lorraine Fox is his wife, and Grace Cannon Fox, who is deceased, was his mother. James Fox, hereafter sometimes referred to as petitioner, came to Virginia Beach, Virginia, as a student in 1931. Between 1931 and 1951 petitioner was involved in various gambling enterprises in Virginia Beach, Miami, Florida, and Durham and Greensboro, North Carolina. In the early years of that period petitioner worked for others as a dealer in dice games and in taking bets on horse races. Later he took bets on horse races and operated dice and card games on his own. During the years in question here petitioner's principal business activity was gambling. In 1941 petitioner and two of his brothers, Charles and Paul Fox, began to operate the Piney Point Club (variously called Piney Point Boat Club and Piney Point Boat Club Assn.) in Virginia Beach, Virginia, as equal partners. The club consisted of a building having a main room for gambling, a bar and dance floor, a small dining room and kitchen, and an upstairs apartment where some of the partners lived at various times. Various types of gambling *32 games were carried on including roulette, craps, and black jack. Initially the club building was leased with an option to buy. Subsequently it was bought for $14,000 plus the rentals already paid. Paul and Charles did not invest money in the Piney Point Club at the outset, but their services in running and supervising the club were substantial. Later they left parts of their shares of the club's earnings in the business to be used as operating funds. In 1946 Paul withdrew from the business, and his interest was bought by petitioner. A value of from $10,000 to $12,000 was placed on Paul's interest, but none of this amount was ever paid. The Piney Point Club employed an accountant during the years in question. For 1943, 1944, and 1945 a journal was kept, in which were recorded the cash receipts of the business from sales - bar, food, and tobacco - and rentals, and its disbursements. In 1950 and 1951 "Daily Cash Sheets" were filled out, on which were recorded the daily receipts and disbursements from the operation of the club. In 1950 and 1951 a journal and general ledger reflecting the accounts of the business were kept by an accountant. Receipts from gambling were not recorded in *33 the manner described above, but at various times James would give the accountant a memorandum stating the amount of gambling revenue received from the operation of the Piney Point Club. During the years 1946 to 1951, inclusive, the Piney Point Club had an account with the National Bank of Commerce of Norfolk at Virginia Beach, Virginia. Partnership returns for the Piney Point Club were filed for the years 1942 to 1944, inclusive, and 1946 through 1950. In 1945 petitioner in equal partnership with Isidor Biscow bought a house and lot in Virginia Beach to be used as a rental property. The house had been used previously as a rooming house. The partnership received rentals from the property from 1946 through 1948. In 1949 the property was torn down and a restaurant built in a different place on the same property. The site of the razed building was used as a parking lot in connection with the newly-built restaurant. The partnership received rentals from the restaurant from 1949 to 1951, inclusive. In addition to his partnership interest in the Piney Point Club, petitioner had interests in other gambling houses. In 1950 he bought an interest in the Latin Quarter, a night club in *34 Virginia Beach where gambling was done. He paid $7,500 for this interest, of which $3,200 was paid in 1950 and about $4,000 was paid between 1950 and 1953. During the years in question here petitioner actively gambled on his own account, and for this it was necessary to have substantial amounts of cash. As of the end of the years listed below, petitioner had on hand the indicated amounts of money which belonged to him: Year
Amount
1942
$10,000
1943
9,000
1944
8,000
1945
7,000
1947
6,000
1948
6,000
1949
6,000
1950
2,000
During the years 1942 to 1951, inclusive, petitioner had an account with the National Bank of Commerce, Virginia Beach, Virginia. In 1949 the partnership began building a residence on the Piney Point property. Petitioner and Charles Fox helped in the construction of the building, which was completed in 1950 at a cost of approximately $45,000, including furniture and fixtures. Some of the money needed for building was borrowed and a deed of trust given as security. The building had two storeys and a basement that had facilities for gambling. On the basement level there was also a two-car garage. Occasionally gambling was done in *35 the basement. Petitioner used the building as a private residence and later rented it. The building was an asset of the Piney Point partnership and was built with partnership funds. In 1951 petitioner bought various life insurance policies having a total face value of $91,500. The total premium on these policies for 1951 was $4,414.33; of this amount $1,195.50 was paid by petitioner in 1951 and a promissory note for the difference, payable in six months, was given to the selling agent. The amount of the note represented the agent's commission. In 1943 petitioner bought a used 1942 Lincoln automobile for $2,100, of which $900 was paid in 1943 and a note given for the remainder. Petitioner filed individual income tax returns for 1942, 1943, 1944, and 1945, and joint returns with his wife Lorraine Fox for the years 1948 to 1951, inclusive. No return for 1946 was filed by petitioner. Petitioner and his wife did not file declarations of estimated tax for 1949, 1950, and 1951. The joint return of petitioner and his wife for 1950 was not timely filed. The notices of deficiency sent by respondent to petitioners were all dated March 6, 1953. During her lifetime Grace Cannon Fox, *36 petitioner's mother, lived in Hazleton, Pennsylvania. Between 1941 and 1943, when James, Paul, and Charles Fox anticipated going into military service, title to the Piney Point property was transferred to Grace Cannon Fox. The transfer was merely nominal; beneficial ownership of the property remained in the partnership, and its use for partnership purposes was continued. Grace Cannon Fox died between July 1953 and January 1955. On January 24, 1955, Rose M. Fox was granted letters of administration on the estate of Grace Cannon Fox by the Register of Wills for Luzerne County, Pennsylvania. Opinion TIETJENS, Judge: Respondent has determined deficiencies in income tax against petitioner for the years 1943 to 1946, inclusive, and against petitioner and his wife, Lorraine Fox, for the years 1948 to 1951, inclusive. Lorraine's liability arises from filing joint returns with her husband. The principal basis of the deficiencies, according to respondent, is that petitioner understated his income on the returns for the years in question. To reconstruct petitioner's income respondent resorted to the increase in net worth plus non-deductible expenditures method. Some of the issues presented *37 may be readily disposed of for lack of proof. Petitioner has pleaded that the statute of limitations bars the assessment of taxes against him and his wife for the years 1943 to 1946, inclusive, and for 1948. Respondent's notices of deficiency are dated March 6, 1953. In his answers respondent pleaded that the returns of petitioner and his wife were fraudulent with intent to evade tax, in which case there would be no limitation on the time within which respondent could assess and collect the taxes. Section 276(a), Internal Revenue Code of 1939. The burden of showing fraud is upon respondent (section 1112, I.R.C. of 1939). On brief however respondent stated that he "does not make any argument as to whether the deficiencies are due to fraud with intent to evade tax," and no evidence was introduced to show that the returns of petitioner and his wife were fraudulent. Accordingly, we hold that respondent has failed to show that any part of the deficiencies for the years in question was due to fraud with intent to evade tax, or that any of the returns filed by petitioner and his wife were false or fraudulent with intent to evade tax. The assessment of income taxes for the years 1943 to 1945, *38 inclusive, is therefore barred by the statute of limitations. Section 275, Internal Revenue Code of 1939. With respect to 1946, respondent determined that petitioner failed to file a return. We have found as a fact that no return was filed by petitioner for 1946. Consequently the period of limitations does not bar the assessment of tax for that year. Section 276(a), Internal Revenue Code of 1939. With regard to the year 1948, there is no question but that the three-year period of limitations expired prior to the issuance of respondent's deficiency notice in 1953. Respondent therefore has the burden of proving facts to establish an exception to the three-year statutory period, by showing that the five-year period of limitations applies for the year (section 275(c), I.R.C. of 1939). C. A. Reis, 1 T.C. 9 (1942). Although the return of petitioner and his wife for 1948 was introduced in evidence and discloses their gross income for that year, there is nothing else in evidence to show that petitioners omitted from gross income an amount properly includible therein in excess of 25 per cent of the amount of gross income stated in the return. We must conclude, therefore, that *39 respondent has failed to show an exception to the three-year statutory period, and that the assessment of tax for 1948 against petitioner and his wife is barred. Respondent also has determined that petitioner and his wife failed to file a return for 1950 within the time required. Petitioner came forward with no evidence which would rebut the correctness of this determination, and it must stand. For the years 1949 to 1951, inclusive, respondent determined additions to tax against petitioners for failure to file declarations of estimated tax. Section 294(d)(1)(A), Internal Revenue Code of 1939. Since no evidence was offered by petitioners on this issue we uphold respondent's determination. Respondent has asserted transferee liability against the estate of Grace Cannon Fox, deceased, for the years 1943 to 1946, inclusive, and 1948 to 1950, inclusive, based on the transfer of the Piney Point property to Grace Cannon Fox, petitioner's mother, while she was living. Petitioner's evidence clearly shows that title to the Piney Point property was transferred to Grace Cannon Fox by petitioner and his brothers prior to their entry into military service without any intention of passing beneficial *40 ownership. After the transfer, the property continued to be used by the partnership for its purposes, and there is no indication that Grace Cannon Fox, who lived in Hazleton, Pennsylvania, ever had anything to do with the Piney Point property. We have held that a transferee of property who receives no beneficial interest in the transferred property can not be held individually liable under section 311, Internal Revenue Code of 1939, for the tax imposed upon the transferor. Paulyn E. Tomfohr, 44 B.T.A. 730 (1941). Therefore, under the circumstances here there can be no transferee liability on the estate of Grace Cannon Fox, deceased. There remains the troublesome issue of the correctness of respondent's computation of the net income of petitioner for 1946, and of petitioner and Lorraine for the years 1949 to 1951, inclusive, by use of the net worth plus non-deductible expenditures method. First there is the question whether, as respondent contends, petitioner's books and records do not accurately reflect his income, so as to justify the use of the net worth method of reconstructing petitioner's income. Morris Lipsitz, 21 T.C. 917 (1954), affd. 220 Fed. (2d) 871. *41 The only books of account shown to have been kept were those of the Piney Point Club. These books were not complete, were kept for only some of the years in question, and, more important, did not accurately show the income received from gambling at Piney Point. Furthermore, there appears to have been no accurate accounts kept of petitioner's income from other sources - the gambling he did independently of Piney Point, and his rental income. Respondent's resort to the net worth method to compute petitioner's income for the years in question is wholly justified. Cash on Hand The net worth computations on the basis of which respondent determined the deficiencies herein are set forth in his answer and we will not set them out in detail here. Petitioners have attacked a number of the items used in the calculations and claim that by demonstrating error therein have shown that respondent's determinations were arbitrary and capricious and therefore that the presumptive correctness of the determinations is destroyed, citing Helvering v. Taylor, 293 U.S. 507. We do not think this is necessarily so. We do think, however, that petitioners have demonstrated error with respect to *42 some items entering into the net worth computations and, doing the best we can with the evidence, we have made findings with respect to the items in controversy which we believe can form the basis for arriving at the correct income of petitioners in a Rule 50 computation. David J. Pleason, 22 T.C. 361, affd. 226 Fed. (2d) 732 (C.A. 7, November 2, 1955); Michael Potson, 22 T.C. 912 (on appeal C.A. 7). One of petitioner's principal complaints against the increases in his net worth determined by respondent is the latter's failure to give him any credit for cash on hand during some of the years in question, and his allowance of very small amounts of cash for other years. Petitioner claims that his principal business activity was gambling and that to operate, it was absolutely necessary for him to have large amounts of money on hand. Petitioner testified to having on hand amounts as large as $40,000 and $25,000 in some years. There was also testimony by petitioner's brothers and various other persons who either worked at the Piney Point Club or had business dealings with petitioner that corroborated to some extent petitioner's claim that he had *43 large amounts of money on hand during the taxable years. We have found as a fact that petitioner's principal business activity was gambling, and we think it reasonable to conclude that to operate petitioner was required to have on hand more cash than respondent has credited him with. After considering all the evidence on this question we have used our best judgment and have set forth in our findings of fact the amounts of money that petitioner had on hand at the end of each year between 1942 and 1950, inclusive. Partnership Petitioner also complains that respondent has charged him with the sole ownership of the Piney Point Club and its income; whereas, petitioner asserts, the club was owned by a partnership consisting of himself and two of his brothers, Charles and Paul Fox. In 1946, petitioner says, Paul withdrew and his interest was bought by petitioner. We think the evidence supports this contention of petitioner. The evidence shows that while Charles and Paul did not invest money in the club originally, they actively participated in its management and left part of their earnings in the business to be used as operating funds. Considering these circumstances and all of the other *44 evidence introduced by petitioner to show the existence of a partnership, which went mainly unrebutted by respondent, we conclude that petitioner and his brothers Charles and Paul intended to join together as partners to operate the Piney Point Club and that the club was operated as a partnership during the years in question. During the years 1943 to 1945, inclusive, this partnership consisted of three brothers as equal partners. In 1946 petitioner bought out Paul's interest and became a two-thirds partner, with Charles owning the remaining one-third. The value of Paul's partnership interest when bought by petitioner in 1946 was between $10,000 and $12,000, but none of this amount ever was paid. Deduction for Demolition Loss We have found that petitioner in partnership with Isidor Biscow bought a house and lot in Virginia Beach in 1945 for use as a rental property. Rental income was received by the partnership between 1946 and 1949, inclusive, and in 1949 the property was razed and a new building - a restaurant - built. Rental income was received from the restaurant for the years 1949 to 1951, inclusive. Petitioner claims as a deduction his share of a demolition loss for 1949 arising *45 out of the razing of the building originally purchased. We think the petitioner's evidence is inadequate to establish the amount of his loss. The only evidence to show the cost of the building is petitioner's testimony and that of his partner, Biscow; a statement of the amount of the loss contained in the joint return of petitioner and his wife for 1949; and a statement of partnership loss contained in the partnership's copy of its return for 1949. No agreement of sale or deed was offered in evidence; nor was a promissory note or mortgage introduced, although Biscow testified that a part of the purchase price was paid with a loan secured by a mortgage on the property. And no explanation for the absence of these documents was offered. On this issue, we hold that petitioner has failed to sustain his burden of showing the amount of the claimed demolition loss. Surf Beach and Cabana Club, Inc. For the years 1950 and 1951 respondent computed petitioner's investment in the Surf Beach and Cabana Club, Inc. to be $30,000 and $50,000, respectively. Petitioner testified that his investment in this club was $18,000, but we think this testimony, which is supported by little else of record, *46 is insufficient to demonstrate error in respondent's figures. Latin Quarter Club Respondent computed petitioner's investment in the Latin Quarter Club to be $13,247.35 in 1950. We think petitioner has introduced sufficient evidence to show this investment to have been $7,500 instead of the larger figure used by respondent. Of this amount $3,200 was paid by petitioner in 1950 and $4,000 was paid between 1950 and 1953. Residence of Piney Point Property Respondent has treated the residence constructed on the Piney Point property as an individual asset of petitioner. However, with respect to this residence built in 1949 and 1950, we have found as a fact that it was built with partnership funds and was an asset of the Piney Point partnership. This holding is justified, we feel, by petitioner's evidence showing that the building was put upon property owned by the partnership, that both petitioner and his brother Charles, then the remaining partners, helped in the actual construction of the building, and that the basement of the building was used at times for the partnership's gambling games. We recognize the inexactness of net worth computations and the difficulties of arriving *47 at accurate net income figures in situations such as that which confronts us. In the circumstances we have carefully studied all the evidence of record and used our best judgment in making our findings of fact. We believe the foregoing determination will dispose of the principal issues between the parties and provide the basis on which the income of petitioner and his wife Lorraine for the years still in question may be computed under Rule 50. Whether petitioner and his wife are liable for additions to tax for substantial underestimate of estimated tax for 1949 to 1951, inclusive, (section 294(d)(2)), will depend on the amounts of taxes eventually determined under Rule 50 to be due for those years. Decisions will be entered under Rule 50.